1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    PAMELA M.,[1]                        Case No.  20-cv-05479-TSH

8                   Plaintiff,
                                          **ORDER RE: CROSS-MOTIONS FOR**
9        v.                               **SUMMARY JUDGMENT**

10   KILOLO KIJAKAZI,                     Re: Dkt. Nos. 23, 28

11                  Defendant.

12

13                      **I.     INTRODUCTION**

14          Plaintiff Pamela M. moves for summary judgment to reverse the decision of Defendant

15   Kilolo Kijakazi, Acting Commissioner of Social Security, denying her claim for disability benefits

16   under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 23.  Defendant cross-moves to

17   affirm.  ECF No. 28.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral

18   argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and

19   relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's

20   cross-motion for the following reasons.[2]

21                  **II.     PROCEDURAL HISTORY**

22          On March 22, 2018, Plaintiff filed an application for Social Security Disability Insurance

23   benefits, with an alleged disability onset date of July 1, 2010.  AR 155-56, 170.  She was last

24   insured for benefits on December 31, 2015.[3]  AR 170.

25   _____

26   [1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
     recommendation of the Committee on Court Administration and Case Management of the Judicial
27   Conference of the United States.
     [2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF
28   Nos. 5, 10.
     [3] Under the Act, a plaintiff must establish a disability by the last date of their insured status.  *See*

United States District Court
Northern District of California

1   Plaintiff's application was initially denied on May 4, 2018 and again on reconsideration on

2   June 7, 2018.  AR 77-87.  An Administrative Law Judge ("ALJ") held a hearing on January 28,

3   2020 and issued an unfavorable decision on February 21, 2020.  AR 12-25.  The Appeals Council

4   denied Plaintiff's request for review on July 22, 2020.  AR 1-3.  Plaintiff now seeks review

5   pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

7   Plaintiff raises four issues on appeal: (1) the ALJ improperly addressed the medical

8   opinions; (2) the ALJ improperly rejected her testimony; (3) the ALJ improperly rejected lay

9   witness testimony; and (4) the ALJ's step five finding is not supported by substantial evidence.

### IV.   STANDARD OF REVIEW

11   42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

12   to deny disability benefits, but "a federal court's review of Social Security determinations is quite

13   limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

14   determination should be upheld unless it contains legal error or is not supported by substantial

15   evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).

16   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

17   support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

18   (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.

19   *Garrison*, 759 F.3d at 1009 (citation omitted).

20   The Court "must consider the entire record as a whole, weighing both the evidence that

21   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

22   simply by isolating a specific quantum of supporting evidence."  *Id.* (citation omitted).  "The ALJ

23   is responsible for determining credibility, resolving conflicts in medical testimony, and for

24   resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

25   either affirming or reversing a decision," the Court may not substitute its own judgment for that of

26

27   _____

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Because Burch was only insured for
28   disability benefits through September 30, 1999, she must establish a disability on or prior to that
date.").

the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.   DISCUSSION

### A.   Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity from her alleged onset date of July 1, 2010 through her date last insured of December 31,

3

1   2015.  AR 17.

2         At step two, the ALJ decides whether the claimant's impairment or combination of

3   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

4   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

5   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

6   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

7   impairments: multiple sclerosis with mild optic neuritis (20 C.F.R. 404.152(c)).  AR 17.

8         At step three, the ALJ evaluates whether the claimant has an impairment or combination of

9   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

10  "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

11  describe impairments that are considered "to be severe enough to prevent an individual from doing

12  any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

13  medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

14  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

15  medical criteria.  An impairment that manifests only some of those criteria, no matter how

16  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

17  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

18  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

19  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

20  did not have an impairment or combination of impairments that meets the listings.  AR 18.

21        If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

22  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

23  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

24  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

25  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

26  it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

27  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

28  determined Plaintiff has the RFC to

United States District Court
Northern District of California

1  
2  
3  
4  
5  

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: can do work that does not require constant visual acuity; can avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people and objects; has sufficient vision to handle and work with large objects such as boxes and tools like brooms, shovels, and sledge hammers; is precluded from working in proximity to hazards such as unprotected heights, moving machinery parts, and open flames; and cannot, as a job duty, operate a motor vehicle or heavy equipment.

6  AR 18.  Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.

7  AR 23.

8        At step five, the burden shifts to the agency to prove that "'the claimant can perform a

9  significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting

10  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

11  on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

12  P, App. 2,[4] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).

13  "[A] vocational expert or specialist may offer expert opinion testimony in response to a

14  hypothetical question about whether a person with the physical and mental limitations imposed by

15  the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

16  either as the claimant actually performed it or as generally performed in the national economy."

17  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of

18  Occupational Titles ("DOT").[5]  *Id.*  Here, relying on the opinion of a vocational expert, who

19  testified that an individual with such an RFC could perform jobs existing in the economy,

20  

21  
22  
23  
24  
25  

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

26  
27  
28  

[5] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

United States District Court  
Northern District of California

1    including bagging salvager and housekeeper, the ALJ concluded that Plaintiff is not disabled.  AR

2    24.

3    **B.   Medical Opinions**

4         **1.   Legal Standard**

5         As a preliminary matter, the parties dispute the standard for evaluating medical opinion

6    evidence.  For benefits applications filed after March 27, 2017, the Social Security

7    Administration's regulations and several Social Security Rulings regarding the evaluation of

8    medical evidence have been amended.

9         Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and

10   convincing reasons to reject a treating physician's uncontradicted opinion and must provide

11   specific and legitimate reasons to reject a treating physician's contradicted opinion.  *See Trevizo v.*

12   *Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  However, under the current regulations, "the

13   Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this

14   includes giving controlling weight to any medical opinion.'"  *V.W. v. Comm'r of Soc. Sec.*, 2020

15   WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20

16   C.F.R. § 404.1520c(a); *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (noting

17   that the 2017 regulations eliminate the deference given to treating physicians for claims filed after

18   March 27, 2017); SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source

19   Medical Opinions").  Some district courts have continued to apply the "clear and convincing" and

20   "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's]

21   reasoning."  *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

22   Nov. 10, 2020).  Others, including courts in this district, have not.  *See, e.g., V.W.*, 2020 WL

23   1505716, at *13; *Madison L. v. Kijakazi*, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021);

24   *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021); *Agans v.*

25   *Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021)).

26        "It remains to be seen whether the new regulations will meaningfully change how the

27   Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will

28   continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons'

United States District Court
Northern District of California

in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (citing *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)).  However, the Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act.  In *Lambert v. Saul*, the Court of Appeals addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability determination and the SSA's interpretation of the 1983 Reform Act, which found that no such presumption was available under the statute.  980 F.3d 1266, 1268 (9th Cir. 2020).  In deferring to the agency's interpretation despite its own contrary precedent, the *Lambert* court noted that there are limited circumstances in which a court's own precedent is not controlling, and the court is in fact required to depart from it. *Id.*  "Those circumstances include the intervening higher authority of an administrative agency's authoritative and reasonable interpretation of a statute."  *Id.*  Finding first that the SSA's interpretation was entitled to deference, the Court of Appeals further concluded that "the SSA's authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of a presumption of continuing disability."  *Id.* at 1275.  Given the Ninth Circuit's holding in *Lambert*, the Court finds "it must defer to the new regulations, even when they conflict with judicial precedent."  *Timothy Mitchell B.*, 2021 WL 3568209, at *5; *Agans*, 2021 WL 1388610, at *7; *Madison L.*, 2021 WL 3885949, at *4.

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5).  "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'"  *V.W.*, 2020 WL 1505516, at *13 (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844, 5853, 82 FR 5844-01, 5853).  When evaluating medical opinions, the Commissioner "may, but [is] not required

United States District Court
Northern District of California

1   to," explain how the Social Security Administration considered the remaining factors listed in

2   paragraphs (c)(3) through (c)(5) of the regulations, as appropriate.  20 C.F.R. § 404.1520c(b)(2), §

3   416.920c(b)(2).

4          "Although the regulations eliminate the 'physician hierarchy,' deference to specific

5   medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how

6   [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical

7   opinions." *V.W.*, 2020 WL 1505716, at *14 (citation omitted; brackets in original).  "Further, the

8   ALJ is required to specifically address the two most important factors, supportability and

9   consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

10         **2.    Analysis**

11         Plaintiff contends the ALJ improperly rejected the opinion of her neurologist, Pezhman

12   Zadeh, M.D.  On December 18, 2019, Dr. Zadeh wrote a letter in which he opined that Plaintiff

13   had been diagnosed with multiple sclerosis on July 8, 2015.  AR 1623.  Dr. Zadeh noted Plaintiff's

14   symptoms included transient double vision, extreme fatigue, numbness, and tingling and weakness

15   of her upper and lower extremities.  *Id.*  He opined that walking, standing, or using a computer

16   could aggravate her symptoms.  *Id.*  The ALJ found Dr. Zadeh's opinion was not persuasive

17   because it was not supported by contemporaneous treatment notes from the relevant period.  AR

18   22.  Looking at the treatment notes of record, the ALJ determined there was "little correlation to

19   the objective evidence upon which Dr. Zadeh relies, and given Dr. Zadeh's own routine and

20   conservative treatment of the claimant prior to her date last insured exertional limitations are not

21   warranted."  *Id.*

22         A review of the record supports the ALJ's findings.  For example, in August 2010,

23   Plaintiff attended a routine follow-up examination with Dr. Zadeh.  AR 385-86, 438.  She reported

24   that she had been feeling "great" and had "no new complaints," since her last visit, prior to alleged

25   disability onset date.  AR 385, 396.  Her physical examination was unremarkable, with Plaintiff

26   exhibiting full motor strength and normal gait and station.  AR 386.  Plaintiff was advised to

27   repeat her MRI study in one year.  *Id.*  At her July 2011 visit with Dr. Zadeh, Plaintiff complained

28   of double vision that lasted only "seconds," after being abruptly awoken one night, by her

daughter's crying at 4:00 a.m.  AR 376.  However, her eye examination revealed normal optic discs, full visual fields, and full movements of her eye muscles, without nystagmus (rapid pupil movement), and with pupils that were equal, round, and reactive to light; and, the remainder of her physical examination was equally unremarkable.  AR 377.  Plaintiff was, again, advised to repeat her MRI study in one year.  *Id.*  In May 2013, Dr. Zadeh's progress notes reported Plaintiff's condition was "stable" without new symptoms and documented her continuing normal motor strength, gait, and station.  AR 362-63.  Dr. Zadeh opined in September 2013 that some of Plaintiff's intermittent symptoms, which began after removal of her birth control device, were not related to her neurological condition.  AR 359, 364.  Her physical examination remained unremarkable and Plaintiff was advised to repeat her MRI study "with any new symptoms."  AR 359.  At her November 2014 follow-up, Dr. Zadeh reported there were "no new changes" to Plaintiff condition, and a follow-up appointment was scheduled one year out.  AR 340-41.  In sum, the record reflects that Dr. Zadeh's treatment notes, contemporaneous with the period at issue, contained no documented clinical signs supporting his opined limitations regarding Plaintiff's ability to stand, walk, or use a computer.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citations omitted).  Accordingly, the Court finds the ALJ's consideration of Dr. Zadeh's treatment records was a reasonable consideration under the regulations.  *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that the objective medical evidence presented by an opining medical source, or lack thereof, may factor into an ALJ's supportability analysis).

In addition, the ALJ found Dr. Zadeh's opinion inconsistent with the evidence in the record as a whole prior to Plaintiff's date last insured, which "includes generally unremarkable clinical findings, MRI studies, the claimant's routine and conservative treatment with periodic monitoring, and medical assessments that the claimant's symptoms were stable and in remission."  AR 22.  Indeed, in July 2015, the "clinical course" of Plaintiff's conditions since her October 2009 episode of right-sided weakness, was described by another neurologist as "benign," with no further symptoms since that time.  AR 310, 312.  This too was a reasonable consideration under

the revised regulations. *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that the evidence from other medical sources may factor into an ALJ's consistency analysis); *Madrigal v. Saul*, 2021 WL 826412, at *4 (C.D. Cal. Mar. 4, 2021) ("An ALJ may reject a physician's opinion that does not have supporting evidence, is contradicted by other assessments, or is unsupported by the record as a whole.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Finally, the ALJ found Dr. Zadeh's opinion "is further inconsistent with [Plaintiff's] own reported activities prior to her date last insured," as she "endorsed the ability to walk a lot, be on her feet more than four hours a day, jump rope, swim, work as a pet sitter, do exercise insanity exercises most days of the week, care for two young children, volunteer at a preschool, prepare meals, live in a two story house and climb up or downstairs as needed, carry grocery bags into the house, shop for groceries, do laundry, and clean once a week." AR 22. The ALJ also noted that "[n]o providers advised against any such activity or imposed exertional limitations as to the claimant's activity for any reason during the relevant period." *Id.* The ALJ's consideration of Plaintiff's daily activities is a valid reason to give little weight to a medical opinion. *See Hensley v. Colvin*, 600 Fed. App'x 526, 527 (9th Cir. 2005) (ALJ provided valid reason for giving little weight to medical opinions based, in part, on the finding that they were inconsistent with the claimant's reported daily activities) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (plaintiff's ability to perform multiple daily activities "may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

Plaintiff argues that, contrary to the ALJ's assertions, Dr. Zadeh's letter specifically notes that her diagnosis was in 2015, which is during the relevant period and prior to her date last insured. Pl.'s Mot. at 7. She maintains that if the ALJ wished to know more about which specific date Dr. Zadeh believed her exertional restrictions began and the basis for that opinion, then the ALJ should have exercised her duty to fully and fairly develop the record by recontacting Dr. Zadeh to ask this question. *Id.* However, Plaintiff appears to seek to shift the burden of proof, as it is her duty to prove that she was disabled prior to her date last insured and to "inform [SSA] about or submit all evidence known to [her] that relates to whether or not [she was] blind or

10

disabled." 20 C.F.R. § 404.1512; *see also Coelho v. Colvin*, 525 Fed. App'x 637, 639 (9th Cir. 2013) (reasoning a claimant is required to provide objective medical evidence in support of a claim, and an ALJ is "entitled to disregard" evidence that is remote in time or merely repeated the claimant's subjective symptom allegations "without additional elaboration"). The ALJ already had Dr. Zadeh's treatment records from the relevant time period, and the fact that they are at odds with his later opinion is not a matter of development but supportability. Regardless, before analyzing Dr. Zadeh's opinion, the ALJ fully and appropriately developed the record (see AR 29-61, 62-76, 77-152, 155-163, 166-1622) and confirmed its completeness with Plaintiff's counsel (AR 31). The ALJ specifically confirmed with Plaintiff's counsel at the hearing that Plaintiff had submitted a Title II application, "with a date last insured back in December 2015" and an "alleged onset date [of] July 1, 2010." AR 32. Indeed, after Plaintiff's counsel questioned Plaintiff at length about her current symptoms, the ALJ explained to Plaintiff that her "case is really about the past," because she had "a date last insured back in December 2015." AR 52-53. The ALJ then questioned Plaintiff about the initial onset of her visual condition, which Plaintiff could not recall. AR 53.

In sum, the Court finds that substantial evidence supports the ALJ's decision, and it must therefore be affirmed. *Biestek*, 139 S.Ct. at 1154 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

## C.    Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff explained she stopped working as a veterinary technician due to maternity leave, but when she tried to return to work later, she found she could not handle it anymore. AR 33. She briefly tried to work as a dog walker after she got sick, but her condition was too unpredictable from day to day. AR 43.

Plaintiff's multiple sclerosis causes extreme fatigue, foot drop, and numbness and tingling on the right side of her body. AR 34. It is difficult for her to use her right hand. *Id.* She has vision problems, and some days cannot see out of her left eye. *Id.* She can drive short distances during the day, but she cannot drive at night. AR 36-37. She takes injectable medications and has side effects including nausea and dizziness. AR 41. She has fatigue and poor ability to focus. AR

45.

Plaintiff testified that her husband takes care of their pets and does most of the shopping and cooking.  AR 36, 39.  She cannot stand for long enough to cook a meal.  AR 47.  When Plaintiff had a newborn baby, her husband took paternity leave to care for the child.  AR 50.  Her parents sometimes have to help drive her children to school.  AR 49.

Plaintiff testified she has too much fatigue to keep up with a sedentary job.  AR 50.  There are days she can hardly see and looking at screens often triggers her nausea.  AR 46, 51.  She has a hard time reading because of bouts of double vision.  AR 53.

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  AR 21.

### 1.       Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P, 2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform

United States District Court
Northern District of California

1    work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the

2    claimant's testimony or between the testimony and the claimant's conduct; unexplained or

3    inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

4    whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*,

5    674 F.3d at 1112 (citations and internal quotation marks omitted).  "[I]f an individual's statements

6    about the intensity, persistence, and limiting effects of symptoms are inconsistent with the

7    objective medical evidence and the other evidence, [the ALJ] will determine that the individual's

8    symptoms are less likely to reduce his or her capacities to perform work-related activities or

9    abilities to function independently, appropriately, and effectively in an age-appropriate manner."

10   SSR 16-3p, 2016 WL 1119029, at *7.

### 2.    Analysis

12       Here, the ALJ provided several reasons for finding Plaintiff's allegations inconsistent with

13   the evidence of record.  First, the ALJ found they were inconsistent with the objective medical

14   evidence, including the clinical signs and laboratory findings  AR 20-22.  This was a reasonable

15   consideration in assessing the intensity, persistence, or functionally limiting effects of Plaintiff's

16   symptoms.  *See* 20 C.F.R. § 404.1502(f) (defining objective medical evidence as "signs,

17   laboratory findings, or both."); *id.* § 414.1529(c)(2) (including objective medical evidence among

18   the considerations when assessing a claimant's symptoms); SSR 16-3p, 2016 WL 1119029

19   ("[O]bjective evidence is a useful indicator" of symptom intensity and persistence).

20       The ALJ noted Plaintiff's generally "unremarkable" clinical signs, during the period at

21   issue.  AR 19-20; *see* 20 C.F.R. § 404.1502(g) (defining objective clinical signs).[6]  The ALJ noted

22   that Plaintiff persistently retained her full ("5/5") motor strength in her upper and lower

23   extremities; normal muscle tone with no evidence of atrophy, joint tenderness, or deformity;

24   normal gait; and, intact ability to heel, toe and tandem walk.  AR 20 (citing AR 312, 374, 377);

---

[6] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."

United States District Court
Northern District of California

*see* AR 325, 339, 345, 347, 354, 358, 359, 363, 386, 397).  The ALJ also noted the medical

evidence revealed normal optic discs, full visual fields, and full movements of her eye muscles,

without nystagmus (rapid pupil movement), and with pupils that were equal, round, and reactive to

light.  AR 20 (citing AR 312, 374, 377).  Such clinical signs were inconsistent with Plaintiff's

allegations of extreme and persistent symptoms causing her work-preclusive limitations prior to

December 2015.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), *as amended* (June 22,

1999) (reasoning the lack of muscular atrophy or any other physical signs of inactivity is

inconsistent with allegations of being a "totally incapacitated individual"); *Johnson v. Shalala*, 60

F.3d 1428, 1434 (9th Cir. 1995) (upholding an ALJ's discounting of complaints because there

were "several contradictions between claimant's testimony and the relevant medical evidence.").

The laboratory findings were also inconsistent with Plaintiff's allegations.  *See* 20 C.F.R. §

404.1502(c) (defining objective laboratory findings).[7]  The ALJ reviewed Plaintiff's October 2009

diagnostic test results, including her MRI and spinal tap, which supported a finding that Plaintiff

had a neurological condition.  AR 19.  However, the ALJ observed that, as of her alleged disability

onset date and through her date last insured, Plaintiff's objective laboratory test results

consistently showed "stable or dormant and benign" findings.  AR 20, 301, 312.  For example,

after conducting an examination of Plaintiff and reviewing her longitudinal objective laboratory

test findings (AR 310; see AR 20 citing AR 303, 307-08, 313, 365, 381-82, ), in July 2015,

approximately five month prior to her date last insured, a neurologist concluded that that

Plaintiff's "clinical course over the last 6 years [had] been benign," and the series of MRI studies

were "stable, taking into account changes in technique" (AR 312).  *See Stubbs-Danielson v.

Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding evaluation finding symptom allegations

unsupported by objective and other evidence).  The ALJ found these objective medical records

revealed "unremarkable" clinical signs and "stable" laboratory findings that were inconsistent with

---

[7] "Laboratory findings means one or more anatomical, physiological, or psychological phenomena
that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic
techniques include chemical tests (such as blood tests), electrophysiological studies (such as
electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and
psychological tests."

Plaintiff's allegations of extreme and persistent symptoms causing work-preclusive limitations. AR 19-21.  This was a reasonable finding.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

The ALJ also considered Plaintiff's treatment history.  AR 19-21; *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v) (listing treatments among the factors considered in subjective symptom analysis).  The ALJ found "the course of treatment prescribed for [Plaintiff's] symptoms through her date last insured was overall routine and conservative in nature."  AR 21.  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson*, 60 F.3d at 1434).  As the ALJ observed, the record reflects that, after Plaintiff recovered from an October 2009 episode of right-sided weakness, her symptoms were largely dormant, benign, and in remission through her 2015 date last insured.  AR 20 (citing AR 310).  Indeed, after her alleged disability onset date and through her date last insured, the ALJ noted Plaintiff took no medications for her conditions.  AR 19-21 (citing AR 430 (reporting no steroids were needed to treat her condition); AR 320 (noting her condition was in remission and she was on no medications); AR 310 (explaining that Plaintiff emphatically declined any immunomodulatory therapy)); *see also* AR 292 (noting Plaintiff had no active "ocular medications," on file as of May 2016); AR 408 (indicating that "neurology [did] not feel treatment [was] indicated"); AR 40-41 (Plaintiff testifying that she did not engage in injection therapy until three years prior to her hearing, sometime in 2016 or 2017).

Plaintiff argues the ALJ failed to ask why she did not take medication until after her date last insured, arguing that SSR 16-3p requires such a query.  Pl.'s Mot. at 11.  However, SSR 16-3p addresses situations when a claimant fails to seek treatment or fails to follow that treatment once prescribed, neither of which is applicable here.  *See* SSR 16-3p, 2017 WL 5180304 ("We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her

United States District Court
Northern District of California

1    complaints."). As discussed above, Plaintiff's providers found that no treatment, beyond

2    monitoring, was indicated. *See, e.g.*, AR 312. That is not a question about Plaintiff's compliance

3    choices. Furthermore, although Plaintiff notes she "did testify that she has significant side effects

4    from the medications she takes currently," Pl.'s Mot. at 11, the medication primarily considered

5    during the relevant period was steroids, not Plaintiff's current medication regiment. *See, e.g.*, AR

6    430. There is no evidence to support Plaintiff's purported concerns over side effects prior to

7    December 31, 2015.

8         The ALJ also noted that MRI studies through the date last insured "consistently showed

9    stable or dormant and benign findings." AR 20 (citing AR 380-81 (December 2010 MRI revealed

10   significant interval improvement in the pre-existing demyelinating lesions); AR 364 (February

11   2013 MRI revealed general continuing improvement in the size of the previously existing

12   demyelinating plaques with a small, new periventricular white matter lesion); AR 313 (July 2015

13   MRI revealed slight enlargement of dominant left posterior paraventricular plaque compared to

14   prior MRI; multiple small bilateral periventricular/callosal lesions, some of which were new; a

15   new left subcortical white matter frontal lesion; and stable left periatrial white matter lesion; AR

16   307-08 (November 2015 MRI revealed mild burden of demyelinating disease throughout the

17   supratentorial brain without active disease on DWI and improvement within a single right

18   periatrial lesion compared to the July 2015 MRI); AR 303 (February 2016 MRI revealed overall

19   trace decrease in demyelination)); *see also* AR 312 (indicating in 2015 that Plaintiff's care could

20   be managed through increasingly less frequent monitoring). If Plaintiff were truly incapacitated

21   by her conditions, that treating providers would have prescribed—and Plaintiff would have

22   pursued—significant treatment modalities. As evidence of such treatment is lacking, this was a

23   reasonable consideration. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lacking

24   motivation to seek treatment was "powerful evidence" that the symptom alleged was not as severe

25   as alleged).

26        In addition, the ALJ found Plaintiff's allegations inconsistent with her reported activities of

27   daily living and demonstrated abilities during the period at issue. AR 19-21; *see* 20 C.F.R. §

28   404.1529(c)(3)(i) (listing daily activities among the considerations in a subjective symptom

analysis).  The ALJ noted Plaintiff was able to engage in several activities demonstrating greater function than she alleged, including giving birth to two children, caring for them, preparing meals, climbing up or downstairs as needed, shopping for groceries and carrying grocery bags, doing laundry, cleaning weekly, performing household chores for 45 minutes at a time, and driving a car for up to 45 minutes at time.  AR 19 (citing AR 33, 35, 166-68, 180).  The ALJ further noted that, during the period at issue, Plaintiff reported that "she was walking a lot, on her feet more than four hours a day, jumping rope, swimming, pet sitting for a living, doing exercise insanity exercises most days of the week, caring for two children, preparing for her daughter's birthday party, and volunteering at a preschool."  AR 20 (citing AR 332, 339, 359, 373-74).  The ALJ reasonably found that these activities and Plaintiff's demonstrated abilities were inconsistent with her allegations of extreme and persistent symptoms causing her work-preclusive limitations during the period at issue.  *See Molina*, 674 F.3d at 1113 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

Plaintiff argues these activities were "performed sporadically and with help from others," and that the ALJ improperly "singled out a few periods of temporary well-being from a sustained period of impairment."  Pl.'s Mot. at 7, 10.  However, during the period at issue, the record reflects that Plaintiff experienced relatively few periods of elevated symptoms.  On July 13, 2015, Plaintiff's provider noted that she had "recovered from her right sided weakness" documented in October 2009, and "[t]here have [been] no further symptoms since that time."  AR 310.  Another provider noted in July 2015 that Plaintiff's "clinical course over the last 6 years" had been "benign."  AR 312.  Given this record, the Court finds the ALJ did not "cherry pick" evidence.  *See Jones v. Berryhill*, 720 Fed. App'x 851, 853 (9th Cir. 2017) (reasoning "the ALJ did not cherry-pick isolated examples of improvement," when "[t]he instances the ALJ pointed to spanned several months"); *see also Smith v. Berryhill*, 752 Fed. App'x 473, 475-76 (9th Cir. 2018).  Moreover, while Plaintiff claims to have needed to rely on others for her activities, she fails to identify temporally relevant evidence supporting that allegation.  Instead, she cites her 2020 testimony that barely, if at all, relates back to her 2015 date last insured.  Pl.'s Mot. at 10 (citing AR 36-53).

United States District Court
Northern District of California

1     Plaintiff also argues the activities cited by the ALJ are not inconsistent with her testimony

2   that she was unable to sustain activities long enough to make it through a typical workday.  Pl.'s

3   Mot. at 10-11.  However, an ALJ may consider a claimant's activities insofar as those activities

4   are not consistent with her allegations.  *See Molina*, 674 F.3d at 1113 ("Even when everyday

5   activities suggest some difficulty functioning, they may be grounds for discrediting [Plaintiff's]

6   testimony to the extent that they contradict claims of a totally debilitating impairment.");

7   *Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (while evidence did not suggest claimant

8   could work, it "suggest[ed] that [his] later claims about the severity of his limitations were

9   exaggerated").  In other words, the issue before the ALJ was not whether Plaintiff's activities

10   evince actual vocational ability, but rather whether they suggest greater functional ability than she

11   has alleged.  The ALJ properly considered whether Plaintiff "engage[d] in daily activities

12   inconsistent with [her] alleged symptoms."  *Molina*, 674 F.3d at 1113; *accord Klug v. Berryhill*,

13   2019 WL 6138459, at *18 (D. Nev. Nov. 4, 2019), *report and recommendation adopted*, 2019 WL

14   6134472 (D. Nev. Nov. 19, 2019) ("Plaintiff admitted activities of daily living, including driving,

15   cooking, doing laundry, doing a dish at a time, reading, and watching television," which

16   "contradict claims of total disability").  Thus, the ALJ committed no error in considering

17   Plaintiff's activities.

18     Finally, the ALJ found Plaintiff's termination of her last job due to her pregnancy, rather

19   than her reported conditions, was inconsistent with her allegations of extreme and persistent

20   symptoms causing her work-preclusive limitations during the period at issue.  AR 22.  The ALJ's

21   findings in this regard were reasonable.  Although Plaintiff testified in 2020 that she did not stop

22   working until after she returned from her maternity leave (*see* Pl.'s Mot. at 11 (citing AR 33-34)),

23   in 2018, she reported to the Agency that she stopped working on her alleged disability onset date

24   because of her pregnancy.  AR 180; *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

25   (ALJ properly relied on the fact that the claimant stopped working because he was laid off rather

26   than because of an injury); *Kelly v. Berryhill*, 727 Fed. App'x 282, 284 (9th Cir. 2018) ("When

27   filling out her disability report and answering the question of why she had stopped working,

28   [claimant] did not select the answer that she had done so because of her medical conditions, but

rather indicated she had stopped 'because of other reasons'").  As the ALJ noted, while parenthood represents a "meritorious" reason to leave the workforce, it is not a "severe" medically determinable condition expected to last twelve months, and it is therefore not a disability.  AR 22; *see* 20 C.F.R. § 404.1509 (explaining that impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"); § 404.1521 (defining a medically determinable condition); § 404.1522 (requiring a "severe" condition to significantly limit one's ability to do basic work activities).  Plaintiff's termination of her last job for reasons unrelated to her alleged disabling conditions was inconsistent with her allegations of work-preclusive limitations.  *See Back v. Colvin*, 653 Fed. App'x 550, 552 (9th Cir. 2016) ("some record evidence suggested that family pressures and concerns about parenting—as opposed to debilitating pain— motivated [claimant] to leave full-time employment").

In sum, the Court finds the ALJ reasonably found Plaintiff's allegations of work-preclusive limitations, prior to December 31, 2015, were inconsistent with her objective medical evidence, treatment history, and reported activities, during the period at issue, as well as her reasons for leaving her last job.  The totality of these inconsistencies provided "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's analysis of Plaintiff's subjective complaints, during the period at issue.  *Biestek*, 139 S. Ct. at 1154.  Further, even if the Court were to find one of the ALJ's reasons was deficient, "several [Ninth Circuit] cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115 (citations omitted); *Batson*, 359 F.3d at 1197 (error is harmless if substantial evidence supports the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion" not to accept claimant's testimony).

Accordingly, the Court must affirm the ALJ's decision.

### D.    Lay Witness Testimony

Plaintiff's husband wrote a statement on May 17, 2018, indicating that she takes naps to deal with the side effects of her medications, she is severely fatigued and needs breaks to rest throughout the day, she has visual deficits, and she cannot stand or walk well enough to do most

United States District Court
Northern District of California

1    of her daily activities.  AR 190.  The ALJ noted her husband's description of the severity of

2    Plaintiff's symptoms, but also noted he "did so without reference to the relevant time period."  AR

3    19.  Plaintiff argues the ALJ erred in assuming that the witness statement did not relate to the

4    relevant period because Dr. Zadeh described similar fatigue, difficulty standing and walking, and

5    visual deficits, and noted that these limitations were present in 2015, before the date last insured.

6    Pl.'s Mot. at 13.  She argues the statement supports her testimony that, during relevant times, she

7    could not perform full-time work on a regular and continuing basis, and the ALJ's failure to base

8    the rejection of the lay witness statement on the record and to give specific and legitimate reasons

9    germane to each witness is reversible error.  *Id.*

10            In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

11   concerning a claimant's ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053

12   (9th Cir. 2006) (citation omitted).  Such testimony is valuable precisely because it provides

13   additional information that is not necessarily reflected in the medical records, including how an

14   individual is able to function in the community and with what level of support.  *See Schneider v.*

15   *Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975-76 (9th Cir. 2000).  Thus, "[i]n evaluating the

16   intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence,"

17   including that from "medical sources and nonmedical sources about how [a claimant's] symptoms

18   affect [them]."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  However, the 2017 regulations

19   adjusted requirements for ALJs' consideration of nonmedical evidence as well.  Under the 2017

20   regulations, the ALJ is "not required to articulate how [they] considered evidence from

21   nonmedical sources."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  "Consequently, there is an

22   argument that the ALJ is no longer required to provide "arguably germane reasons" for

23   disregarding such statements, as the Ninth Circuit has traditionally required."  *Gretchen S. v. Saul*,

24   2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) (under new regulations, "the ALJ is no longer

25   required to provide reasons germane to lay witnesses to reject their testimony.");  *Caleb H. v. Saul*,

26   2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020) ("[T]the ALJ is no longer required to

27   provide reasons germane to lay witnesses to reject their testimony.").

28            Here, the only reason given by the ALJ was that Plaintiff's husband's description of the

severity of her symptoms did not reference the relevant time period.  As the ALJ noted, the

statement referenced the status of Plaintiff's symptoms as of May 2018.  AR 190.  It is true that

this statement might not reasonably relate to the period at issue—from July 1, 2010 through

December 31, 2015, but the ALJ is "not required to articulate how [she] considered evidence from

nonmedical sources."  20 C.F.R. § 404.1520c(d).  Regardless, even if the ALJ's stated reason was

found to be invalid, such error is harmless because the reasons the ALJ provided to reject

Plaintiff's testimony apply equally well to her husband's statement.  *See Molina*, 674 F.3d at 1114

("Where lay witness testimony does not describe any limitations not already described by the

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

equally well to the lay witness testimony," the failure to address the lay testimony may be deemed

harmless.); *Rochelle S. v. Saul*, 2021 WL 252925, at *3 (W.D. Wash. Jan. 25, 2021) (finding

harmless error where ALJ "considered" lay witness's testimony but "declined to articulate how,"

because "the reasons the ALJ provided to reject plaintiff's testimony apply equally well to [the lay

witness's] similar statements).  Plaintiff's husband's statements mirror Plaintiff's own subjective

symptom allegations, which, as discussed above, the ALJ reasonably found were inconsistent with

the overall record.

      Accordingly, the ALJ's decision must be affirmed.

**E.**      **Step Five**

      As noted above, the ALJ found that Plaintiff retains the following RFC:

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: can do work that does not require
> constant visual acuity; can avoid ordinary hazards in the workplace
> such as boxes on the floor, doors ajar, and approaching people and
> objects; has sufficient vision to handle and work with large objects
> such as boxes and tools like brooms, shovels, and sledge hammers; is
> precluded from working in proximity to hazards such as unprotected
> heights, moving machinery parts, and open flames; and cannot, as a
> job duty, operate a motor vehicle or heavy equipment.

AR 18.  In finding her not disabled, the ALJ relied on testimony from the vocational expert

("VE"), who opined that an individual with such an RFC could perform jobs existing in the

United States District Court
Northern District of California

1    economy, including bagging salvager[8] and housekeeper.[9]  AR 24.

2        Plaintiff argues the DOT does not describe these occupations as requiring constant visual

3    acuity or as requiring visual acuity at all, but "this defies common sense."  Pl.'s Mot. at 14.  She

4    argues "[o]ne is hard-pressed to realistically believe either of these jobs being accomplished by

5    someone who cannot see whether there are fibers still adhering to a bag or who cannot see whether

6    the linens and drinking glasses in a motel room are clean.  The ALJ's RFC finding indicated

7    [Plaintiff] could see well enough to use a large tool, such as a broom, but could she see whether

8    the floor she had just swept with said broom still had dirt on it or not?"  *Id.*  Plaintiff submits that

9    these jobs are not suitable for someone with her limitations as found by the ALJ.  *Id.*

10       At step five, the ALJ had to determine whether Plaintiff could successfully transition to

11   other work.  That required exploring two issues.  First, the ALJ needed to identify the types of jobs

12   Plaintiff could perform notwithstanding her disabilities.  *See* 20 C.F.R. §§ 404.1560(c)(1),

13   416.960(c)(1).  Second, the ALJ needed to ascertain whether those kinds of jobs "exist[ed] in

14   significant numbers in the national economy."  *Id.* §§ 404.1560(c)(1), 416.960(c)(1); *see id.* §§

15   404.1566, 416.966.  For guidance on such questions, ALJs often seek the views of vocational

16   experts.  *See id.* §§ 404.1566(e), 416.966(e).  As the Supreme Court has recognized, a vocational

17   expert is a "professional," contracted to provide "impartial testimony," who "must have expertise

18   and current knowledge" of the "conditions and physical demands" associated with various jobs, as

19   well as "[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs."

20   *Biestek*, 139 S. Ct. at 1152 (simplified).

21       Here, the VE's testimony directly references the required visual acuity for the jobs in

22   question.  AR 55 (vocational expert testifying that no past relevant work was available for "an

23

24   ───────────────
     [8] "Salvages sacks and bagging used as covering for raw stock fiber: Removes adhering stock
25   fibers from sacks and bagging by hand.  Places bagging in sacks or folds and stacks bagging for
     reuse.  May straighten and place metal tie bands in bundles.  May dip tie bands in paint for reuse."
26   Bagging Salvager, DOT 689.687-010.
     [9] "Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty
27   parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds,
     marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing
28   supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes,
     and rolls carpets." Cleaner, Housekeeping, DOT 323.687-014.

United States District Court
Northern District of California

1    individual that can do work that does not require constant visual acuity. . . .  This is an individual

2    that has sufficient vision to handle and work with large objects such as boxes, tools like brooms,

3    shovels and sledge hammers."); 55-56 (testifying that Plaintiff could not work as a veterinary

4    technician because the position requires good visual acuity); 56 (testifying that bagging salvager

5    and housekeeper meet the visual acuity requirements of the ALJ's hypothetical).  Plaintiff offers

6    no evidence that the VE's testimony is unreliable, other than her lay opinion.  However, an ALJ's

7    reliance on qualified, cogent, and uncontradicted expert testimony generally constitutes substantial

8    evidence in support of an ALJ's finding.  *See Ford*, 950 F.3d at 1159.  At the hearing, Plaintiff's

9    counsel stipulated to the VE's qualifications and did not object to the VE's testimony.  AR 53-60.

10   In fact, Plaintiff's counsel confirmed his understanding that the descriptions for the jobs identified

11   by the VE, in both the DOT and its companion publication, the SCO,[10] did not include a visual

12   acuity component.  AR 58-59.  The ALJ was entitled to rely on the VE's testimony, and Plaintiff

13   identifies no basis for the Court to find error.

14          Plaintiff also argues the VE's testimony cannot represent substantial evidence in support of

15   the ALJ's findings because the hypothetical posed by the ALJ failed to accurately reflect all of her

16   limitations.  Pl.'s Mot. at 15.  However, there is no requirement for the RFC to include those

17   limitations the ALJ found to be unsupported by the evidence of record.  *See Bayliss*, 427 F.3d at

18   1217 (reasoning the "hypothetical that the ALJ posed to the VE contained all of the limitations

19   that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's

20   reliance on testimony the VE gave in response to the hypothetical therefore was proper"); *see also*

21   *Stubbs-Danielson*, 539 F.3d at 1176-77 (plaintiff's argument that the hypothetical questions were

22   incomplete "simply restates her argument that the RFC did not account for all her limitations"

23   based on subjective testimony and alternative medical evidence).  Here, as discussed above, the

24   ALJ articulated several legally sufficient reasons for finding Plaintiff's subjective testimony

25   inconsistent with the evidence of record, as well as for finding not persuasive the extreme

26   limitations opined by Plaintiff's neurologist.  AR 18-23.  Plaintiff's alternative interpretation of

27

28   [10] *Selected Characteristics of Occupations* (U.S. DEPARTMENT OF LABOR, 1993); *see* 20
     C.F.R. § 404.1560(b)(2).

the record does not provide a proper basis for this Court to disturb the ALJ's decision.  *See Thomas*, 278 F.3d at 956 (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations, both physical and mental supported by the record).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id.* at 954.

Accordingly, the Court must affirm.

### VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 29, 2021

THOMAS S. HIXSON
United States Magistrate Judge